UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

                                           Case No.

RGR WATKINS, LLC,

                                           Chapter 11

        Debtor.

_____/

RGR WATKINS, LLC,

        Plaintiff,

v.                                         Adv. No. 8:13-ap-_____

CJUF III ATLAS PORTFOLIO, LLC,
as successor in interest to CSMI INVESTORS
LLC, as successor in interest to BANK OF
AMERICA, N.A.,

        Defendant.

_____/

**COMPLAINT FOR INJUNCTIVE RELIEF**

        Plaintiff,  RGR WATKINS, LLC, d/b/a WATKINS OFFICE CENTER (the

"**Debtor**") sues CJUF III ATLAS PORTFOLIO, LLC, as successor in interest to CSMI

INVESTORS LLC, as successor in interest to BANK OF AMERICA, N.A. ("**CJUF**"),

and alleges as follows:

**Jurisdiction and Venue**

        1.      This Court has jurisdiction over this adversary proceeding pursuant to 28

U.S.C. § 1334(b).  This is a core matter within this Court's exclusive jurisdiction

pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

2.      The statutory predicates for the relief sought herein are 11 U.S.C. § 105(a) and Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## Background

3.      On September 12, 2013, (the "**Petition Date**"), the Debtor filed with this Court its Voluntary Petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

4.      The Debtor continues to operate its business and manage its property as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5.      The Debtor owns Watkins Business Center (the "**Office Center**")[1] which is comprised of 25 one-story office/flex buildings with a total rentable area of 514,218 square feet. The Office Center is located in Norcross, Gwinnett County, Georgia.

6.      The Debtor is a Florida limited liability company.

7.      CJUF is a Delaware limited liability company.

## Operative Facts

8.      RGR Watkins purchased the Office Center on or about August 29, 2007 for an approximate purchase price of $37,000,000. The purchase was financed, in part, through a loan from Bank of America, N.A. ("**BofA**") in the initial principal amount of approximately $20,700,000.00, and through equity contributions from the principals of

---

[1] The name of the office center has recently been changed from the Watkins Business Center to Gateway Business Park.

the Debtor in the approximate amount of $16,000,000.  RGR Watkins acquired the Office

Center to convert the property into individual office condominiums for sale.

9.      Robert G. Roskamp (**"Roskamp"**) is a manger of the Debtor and has been

a manager of the Debtor since its inception.   Roskamp has significant previous

experience in commercial real estate, including the successful condominiumization and

sell-through of office complexes.   Prior to the receivership (as discussed below),

Roskamp devoted a substantial amount of his time to managing the Debtor, including

overseeing the process to condominiumize the Office Center.   In addition, Roskamp has

loaned money or made capital infusions in the Debtor, including a substantial portion of

the approximately $12 million invested by the Debtor in the Office Center.

10.     BofA was aware of this intention from the inception of the loan, and RGR

Watkins relied upon the bank's support in placing the loan.   BofA's actions, and

thereafter partial performance, fraudulently induced RGR Watkins to close on the loan

with BofA, and then continually invest substantial sums into the conversion, alongside

BofA.

11.     BofA actually participated in the process, by reviewing and commenting

on the condominium declarations, plats, etc.  BofA actually funded the beginning of the

planned construction necessary for the conversion.  During this process, BofA and RGR

Watkins entered into an amendment of the loan.  Then, as the maturity date of October

28, 2011 approached, and while BofA and the Debtor were still in active discussions

regarding the condominiumization plan, BofA sold the loan documents in September of

2011, without notice, to CJUF's predecessor in interest. During the course of the loan term, RGR Watkins timely made payments as required by the loan documents.

12.     CJUF, as successor-in-interest to CSMI Investors, LLC, as successor in interest to BofA, asserts that, through various assignments, it now owns and holds the loan documents. As of the Petition Date, CJUF asserts that it is owed a principal amount of approximately $23,000,000.00.

13.     After the acquisition, RGR Watkins contacted CJUF to attempt to discuss the loan relationship and engage in discussions regarding either arrange for financing to take CJUF out at a discount or renew the loan. CJUF called the loan due when it matured on October 28, 2011. Shortly thereafter, CJUF filed suit against RGR Watkins asserting breach of contract and seeking the appointment of a receiver. A receiver was appointed on December 21, 2011. In January of 2012, CJUF began to advertise the property for sale and a sale was scheduled to occur in February 2012. On information and belief, about that time, CJUF learned the debt amount would be satisfied by the value of the property. The February sale date was cancelled and to date has not been reset. CJUF also filed suit against Robert G. Roskamp as the guarantor.

14.     The defendants/counterclaimants subsequently filed counterclaims in both actions based on the false inducement to enter into the loan relationship based upon its reliance regarding the condominiumization plans for the Office Center. RGR Watkins requested arbitration per the loan documents in all actions.

15.     CJUF has alleged that Roskamp executed a guaranty (the **"Guaranty"**) and personally guaranteed all or a portion of the loan extended to the Debtor pursuant to

certain loan documents acquired at a discount by CJUF form Bank of America, on September 29, 2011

16.     Roskamp denies he is indebted to CJUF, and asserts, along with the Debtor, counterclaims and defenses against CJUF and its predecessors in connection with the CJUF Action (as defined below).

17.     Roskamp has not filed a petition for relief under the Bankruptcy Code.

## CJUF Action

18.     CJUF filed a one-count complaint against Roskamp in the United States District Court for the Middle District of Florida ("**Roskamp**").  The complaint seeks a judgment against Roskamp under the Guaranty.  Following a demand for arbitration pursuant to the underlying loan documents, the Action is now pending before an arbitration panel of the American Arbitration Association (the "**Arbitration**").  The Arbitration includes (i) the Guaranty Action, including affirmative defenses and counter-claims; and (ii) counterclaims by the Debtor, which were stayed in the Georgia Action in favor of the arbitration.

## The Chapter 11 Proceeding

19.     The Debtor filed its bankruptcy petition to regain possession of the Property and to restructure and pay in full its obligations to creditors, including CJUF. The Debtor expects to file a plan within the first several weeks following the Petition Date.

20.     Roskamp has continued to actively manage the Debtor and is currently involved in formulating a confirmable plan of reorganization for the Debtor.  Roskamp

has agreed to provide necessary funding in connection with the Debtor's case and under the plan.  Roskamp's services and funding are critical to the Debtor's reorganization efforts.

## Injunctive Relief

21.     The allegations of paragraphs 1 through 16 are incorporated herein by reference.

22.     This is an action for injunctive relief pursuant to § 105(a) of the Bankruptcy Code and Rule 7065 of the Bankruptcy Rules.

23.     The Debtor has a substantial likelihood of success in formulating and confirming a plan of reorganization.

24.     Unless Roskamp and the Arbitration are stayed, the Debtor will suffer the following irreparable harm: (1) Roskamp will be required to spend substantial time, energy, and personal financial resources defending the Arbitration, thereby diverting his time and efforts from the Debtor's reorganization; (2) a judgment against Roskamp will decrease his willingness and ability to contribute any personal funds or assets, or provide financial accommodations, for the Debtor's reorganization; and (3) a judgment in the Arbitration will harm the Debtor because a judgment against Roskamp would, in effect, be a judgment or finding against the Debtor, including with respect to the Counterclaims.

25.     Temporarily staying the Arbitration pending confirmation would not cause significant prejudice to CJUF.

26.     The public interest would be served by staying the CJUF Action pending confirmation because reorganization is preferable to liquidation.

27.    The Debtor has no adequate remedy at law.

WHEREFORE, the Debtor asks this Court to grant injunctive relief, and other and further relief as this Court deems just and proper.

DATED:  September 12, 2013.

/s/ Daniel R. Fogarty
Elena Paras Ketchum
Florida Bar No. 0129267
Daniel R. Fogarty
Florida Bar No. 0017532
Stichter Riedel Blain & Prosser, P.A.
110 East Madison Street, Suite 200
Tampa, Florida   33602
(813) 229-0144 – Phone
(813) 229-1811 – Fax
eketchum@srbp.com
dfogarty@srbp.com
Attorneys for Debtor

12625.85

7